BRAGG *v.* HALL, SECRETARY OF STATE.

5-1182                                    294 S. W. 2d 763

Opinion delivered November 5, 1956.

*Robert L. Rogers II,* for plaintiff.

*Tom Gentry,* Attorney General, for defendant; *Wood & Smith,* for intervenor.

GEORGE ROSE SMITH, J. This is an original action in which the plaintiff attacks the sufficiency of a petition to initiate a constitutional amendment prohibiting pari-mutuel betting. The complaint asserts that the petition is not signed by the required number of qualified electors. The sponsors of the proposed measure have intervened to defend their petition. Questions of fact being presented, we appointed a member of the bar, Riddick Riffel, as the court's master to take the testimony. Supreme Court Rule 17. After the litigants had presented their evidence the master found the petition to be sufficient and recommended that the court dismiss the complaint. The case is now submitted upon the plaintiff's exceptions to the master's report.

It is agreed that 33,513 valid signatures are required for the petition to be sufficient. As filed with the Secretary of State this petition contained 39,885 signatures. The master made a definite finding that 518 of these names should be rejected, for various reasons not questioned by either side. The master expressed himself as being in doubt about 4,015 additional names which were not to be found in the poll books filed by the sponsors of the petition. The master pointed out, however, that even if these names were eliminated the petition would still have 35,352 valid signatures — 1,839 more than the minimum number required. The master accordingly found the petition to be sufficient. In questioning that conclusion the plaintiff insists that the master should have rejected the 4,015 signatures about which he was doubtful and should have decided other issues in the plaintiff's favor.

1. We agree with the plaintiff's contention that the 4,015 names must be deleted. Upon resting his case the plaintiff had shown that those names were not to be found in the poll tax lists filed with the Secretary of

State by the sponsors of the petition. This proof made a *prima facie* case and shifted to the proponents the burden of showing that the persons in question were qualified electors. *Sturdy v. Hall,* 201 Ark. 38, 143 S. W. 2d 547. Instead of adducing evidence to show that the challenged signers were in fact qualified, the intervenors contented themselves with contending that the poll books had not been authenticated in the manner required by law. The intervenors, however, had originally filed these books with the Secretary of State and had thereby impliedly represented that he might rely upon them in determining the sufficiency of the petition in the first instance. In these circumstances the intervenors have had the benefit of the information contained in the lists and are estopped to question their authenticity at a later stage in the proceedings. See *McCollum v. Price,* 213 Ark. 609, 211 S. W. 2d 895. Hence the plaintiff's *prima facie* showing as to these 4,015 names was not overcome, which leaves the petition with the above mentioned margin of 1,839 signatures.

II. The petition consists of many counterparts circulated by different canvassers. The original complaint alleges that counterparts containing 16,415 names should be disregarded for the reason that more than twenty percent of the signatures upon each of these parts are invalid. The master in effect held this allegation to be demurrable and struck it from the complaint. The plaintiff excepts to this ruling.

The master's decision was correct. The plaintiff does not charge conscious and deliberate fraud on the part of the canvassers; he simple asserts that any particular part of the petition must be discarded in its entirety if it is shown that as many as a fifth of its signatures are not good. This contention rests upon the provisions of Ark. Stats. 1947, § 2-210, which relates to the initial examination of the petition by the Secretary of State. The statute provides in substance that if it appears beyond a reasonable doubt that twenty percent of the signatures upon a counterpart are not genuine and should have been so recognized by the canvasser, the Secretary of State shall require the sponsors to prove

that the other signatures on the counterpart are genuine. If the petition is then found to be insufficient the sponsors are given thirty days in which to remedy the defect. The statute clearly does not have the broad scope that the plaintiff attributes to it. Not only does it apply by its terms to the Secretary of State alone; it also contemplates flagrant defects that should have been known to the canvasser. It is not a basis for saying as a matter of law that in subsequent litigation the contestants can annul an entire counterpart merely by showing that a fifth of the signers are not qualified electors.

III. Two counterparts are challenged for the reason that their circulators completed the verification thereto in the State of Texas. We perceive no reason for holding this procedure to be illegal. There is no requirement in the constitution or in the statutes that the affidavit be executed in Arkansas. We uniformly recognize the validity of out-of-state oaths and acknowledgments in the case of depositions, deeds, mortgages, etc. To apply a different rule to initiated petitions might well disenfranchise Arkansas citizens who happened to be out of the state when the petitions were being circulated.

IV. In 773 instances a canvasser signed his own counterpart, as a petitioner, before taking it before a notary public and completing the verification. It is contended that this practice is just as ineffective as a notary's attempt to take his own acknowledgment. The analogy, however, is unsound. In no instance did the canvasser attempt to administer an oath to himself; he merely signed the petition and then took the required oath before a qualified third person. All that is demanded by the constitution is that the circulator swear that ''all the signatures . . . were made in the presence of the affiant, and that to the best of the affiant's knowledge and belief each signature is genuine, and that the person signing is a legal voter.'' Amendment 7. That the canvasser has himself signed the counterpart does not render the affidavit in any respect untrue. There can be no good reason for denying to the can-

vasser the privilege of signing the same petition that he asks others to sign.

V. The remaining exceptions to the master's report do not require extended discussion. Because this court stated in *Pafford* v. *Hall,* 217 Ark. 734, 233 S. W. 2d 72, that the verity of a counterpart is not destroyed by proof "that at least one signature is not genuine," the plaintiff suggests that such verity should be held to be destroyed whenever *more* than one signature is shown not to be genuine. The master did not consider that this argument requires refutation, nor do we. There are two other exceptions, both directed to issues of fact, but together they involve the validity of only 1,066 signatures. As a decision in the plaintiff's favor upon both issues would not overcome the proponents' margin of 1,839 signatures we deem it unnecessary to pass upon these questions of fact.

The master's report is approved and the complaint dismissed for want of equity.