The Honorable W.J. "Bill" McCuen Secretary of State State Capitol Little Rock, AR 72201
Dear Mr. McCuen:
This is in response to your request for an opinion on the following questions regarding A.C.A. § 7-9-111(b) (Supp. 1991).[1]
 1. Regarding petitions which arouse questions of being possibly fictitious, forged, or otherwise clouded, what is the threshold constituting `beyond a reasonable doubt' which would trigger the mechanisms provided in the rest of the section?
 2. What standard should the Secretary of State's office apply and how should the Secretary of State's office make factual determinations in applying the phrase `reasonable diligence?'
 3. If the Secretary of State determines that 20% or more of the signatures on any part are sufficiently questionable to `require the sponsors to assume the burden of proving' the genuineness of the other signatures on the part, should this proof be taken (a) at an evidentiary adversarial hearing with both proponents and opponents entitled to call witnesses, etc., and (b) should the finder of fact at this hearing apply, as a standard of proof, the (i) beyond a reasonable doubt standard or (ii) the preponderance of the evidence standard?
It must be initially noted, in addressing your first two questions, that the phrases "beyond a reasonable doubt" and "reasonable diligence" are not defined in § 7-9-111. Nor has my research yielded a separate statute defining these phrases in the elections context. The Attorney General, as a member of the executive department, cannot provide a controlling definition of a term where the legislature has elected not to provide one. This office does not possess the authority to legislate a definition.
An administrative agency's interpretation of a statute, however, while not conclusive, is highly persuasive. Ark. ContractorsLicensing Bd. v. Butler, 295 Ark. 223, 748 S.W.2d 129 (1988). In this regard, it is my opinion that the Secretary of State's office would be justified in looking to the usually accepted meaning of these phrases in applying the provisions of § 7-9-111. It is a well-settled rule of statutory construction that when the legislature uses words which have received a judicial interpretation and which have a ". . . fixed and well-known legal signification," the words are presumed to have been used in that sense unless a contrary interpretation clearly appears. Kennedyv. Henry, 270 Ark. 275, 604 S.W.2d 585 (1980); State v. Jones,91 Ark. 5, 120 S.W. 154 (1919). With regard to the term "reasonable doubt," it is stated in Black's Law Dictionary that this is a term "often used, probably pretty well understood, but not easily defined." Black's at 441 (5th ed. 1979). The phrase "beyond a reasonable doubt" is defined in Black's as ". . . fully satisfied, entirely convinced, satisfied to a moral certainty; . . . the equivalent of the words clear, precise and indubitable." A "reasonable doubt," according to Black's, is "such a doubt as would cause a reasonable and prudent man in the graver and more important affairs of life to pause and hesitate to act upon the truth of the matter charged." Id. at 442.
While this phrase is ordinarily used in the criminal context, I believe, based upon the foregoing precept of statutory construction, that by using this phrase the General Assembly must have intended to apply a similarly high standard of review in the Secretary of State's sufficiency determination under § 7-9-111. Thus, the Secretary of State should be "fully satisfied" or "satisfied to a moral certainty" before the remaining mechanism in § 7-9-111 is triggered.
With regard to the phrase "reasonable diligence," Black's
defines this phrase as "[a] fair, proper and due degree of care and activity, measured with reference to the particular circumstances; such diligence, care, or attention as might be expected from a man of ordinary prudence and activity." Id. at 12. It is my opinion that this common definition may reasonably be applied in developing a standard under § 7-9-111. If it appears "beyond a reasonable doubt" that twenty percent or more of the signatures on any one part of a petition are clouded or that the petitioners were ineligible to sign, then the Secretary of State must determine whether that fact could have been ascertained "by the exercise of reasonable diligence on the part of the canvasser." This would not necessarily involve a factual determination, but rather, in my opinion, requires a review of the invalid signatures and a determination whether a man of ordinary prudence could have known of the invalidity.
It is my opinion, in response to your third question, that no evidentiary hearing is required. It is clear from a review of the relevant Code sections that no evidentiary hearing is contemplated. See A.C.A. § 7-9-111 (Supp. 1991). Nor, in my opinion, is a court likely to judicially impose such a requirement where, as is the case in Arkansas, the Secretary of State acts ministerially and not in a judicial capacity. SeeHodges v. Dawdy, 104 Ark. 583, 589, 149 S.W. 656 (1912). Seealso Ellis v. Hall, 219 Ark. 869, 871, 245 S.W.2d 223 (1952) ("The Secretary of State, in passing upon the sufficiency of initiative and referendum petitions, acts in a manner somewhat analogous to the conduct of election officials in tabulating ballots"), and Starrett v. Andrews, 195 Ark. 1078, 1083,115 S.W.2d 549 (1938) (". . . ordinary duties of the election commissioners are ministerial. There is little, if any, discretion they may exercise in any matter properly coming before them in the discharge of their duties.") This was the conclusion reached by the Nebraska Supreme Court when it held that because the Nebraska Secretary of State's sufficiency determination is a ministerial rather than a judicial act, the absence of an explicit statutory notice requirement is not unconstitutional as a denial of due process. Labedz v. Beermann, 229 Neb. 657,428 N.W.2d 608 (1988). The court noted that the Secretary of State and those assisting him ". . . do not hear evidence in the course of validating petition signatures, but rather, rely upon their own records in reaching their determinations of validity."428 N.W.2d at 613.
It is my opinion that an Arkansas court would similarly conclude that the Secretary of State relies upon existing records in reaching a sufficiency determination, and that there is no need for an evidentiary hearing. It should be noted in this regard that the argument in favor of a hearing would necessarily be premised upon the unconstitutionality of the current statutes, which require no such hearing. A presumption of constitutionality attaches, however, to the current statutory scheme for certifying petitions, and all reasonable doubt must be resolved in favor of constitutionality. See generally Urrey Ceramic Tile Co. v.Mosley, 304 Ark. 711, 805 S.W.2d 54 (1991). The burden of proving a statute to be unconstitutional rests on the party challenging it. Cozad v. State, 303 Ark. 137, 792 S.W.2d 606
(1990). I cannot conclude, in light of these precepts, that an evidentiary hearing is required.
It should be noted, finally, that the Arkansas Supreme Court has offered some indication of its interpretation of § 7-9-111 when in rejecting the contention that any particular part of a petition must be discarded in its entirety if it is shown that as many as twenty percent are not good, it stated that "[t]he statute clearly does not have the broad scope that the plaintiff attributes to it. . . . [I]t . . . contemplates flagrant defects that should have been known to the canvasser." Bragg v. Hall,226 Ark. 906, 909, 294 S.W.2d 763 (1956).
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elisabeth A. Walker.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh
[1]This provision states as follows:
 (b) In considering the sufficiency of initiative and referendum petitions, if it is made to appear beyond a reasonable doubt that twenty percent (20%) or more signatures on any one (1) part thereof are fictitious, forged, or otherwise clouded or that the challenged petitioners were ineligible to sign the petition, which fact was known or could have been ascertained by the exercise of reasonable diligence on the part of the canvasser, then the Secretary of State shall require the sponsors to assume the burden of proving all other signatures appearing on the part are genuine and that the signers are qualified electors and are in all other respects entitled to sign the petition. If the sponsors refuse or fail to assume and meet the burden, then the Secretary of State shall reject the part and shall not count as petitioners any other names appearing thereon.