The Honorable Jim Luker State Senator Post Office Box 216 Wynne, AR 72396
Dear Senator Luker:
I am writing in response to your request for my opinion on the following questions:
 1. By whom and by what method is a decision to be made under ACA 6-13-634 fixing the number of members of the Cross County School District Board of Directors?
 2. By whom and by what method are the boundaries of the zones to be established?
 3. After the number and the boundaries of the zones are established then by what method and by what time frame are the positions on that new board to be filled?
You report the following background facts as prompting these questions:
 The Cross County School District was formed in the late 1960s by the consolidation of the old Vanndale, Cherry Valley and Hickory Ridge School Districts. At the time of that consolidation, by agreement among those three previous districts, they created a six member school board with two members to be representative of each of the former districts but with voting on all six members to be at large throughout the new district.[1]
 In the school election of September 2004 a majority of the patrons of the Cross County School District voted to elect all school board members from single member zones. This election was called in response to a petition pursuant to A.C.A. 6-13-615 as opposed to having been initiated by the existing school board.
 The Cross County School District has a total of 733 students. The population of the Cross County School District is 8% minority and, therefore, A.C.A. 6-13-631 would not seem to apply including the provisions in that statute providing for the current board to make choices about the number of members of the new board.
RESPONSE
With respect to your first question, I do not believe the voters' approval of single-member zones pursuant to A.C.A. § 6-13-615 necessarily requires a reconsideration of the number of members serving on the Cross County School District Board of Directors, as your question seems to imply. However, if the Board wishes to change the number of its members, I believe it should petition to do so to the State Board of Education pursuant to A.C.A. § 6-13-604 (increase) or A.C.A. § 6-13-606 (decrease). With respect to your second question, the county election commission should establish zone boundaries. A.C.A. § 6-13-615(c). With respect to your third question, A.C.A. § 6-13-615 and Act 872 of 1989 provide that the members of the current board, regardless of residence, will be assigned zones by lot and that elections by zone should be scheduled on a staggered basis, with the length of the current term to be served in each zone again to be determined by lot.
Question 1: By whom and by what method is a decision to be made under ACA6-13-634 fixing the number of members of the Cross County School DistrictBoard of Directors?
In my opinion, the Board will continue to have six members unless it successfully petitions the State Board of Education to increase the membership to seven or to decrease it to five.
Your question appears to assume that the voters' decision to elect Board members by zone requires a redetermination of how many Board members will serve. I believe this assumption is mistaken.
Section 6-13-615 of the Code (Repl. 1999), which sets forth the procedure whereby the voters authorized dividing the District into zones, provides:
 (a)(1) Qualified electors of a school district may, by petition, have placed on the ballot of any annual school election the issue to determine whether to elect the school district board of directors from single-member zones.
 (2) The petitions calling for such an issue to be placed on the ballot shall be signed by not less than ten percent (10%) of the qualified electors of the district, based upon the total number of registered voters in the district.
 (3) The petitions may be circulated between ninety (90) days and forty-five (45) days prior to the election date.
 (4) The petitions shall be filed with the county election commission of the county in which the largest portion of the school district lies.
 (b)(1) Within ten (10) days of the receipt and verification of the sufficiency of the petitions, the county election commission shall notify the board of directors of the affected school district that the issue shall be placed on the ballot of the next school election.
 (2) The county election commission shall specify the wording of the ballot to be used to determine whether to elect the school district board of directors from single-member zones.
 (c) If a majority of the qualified electors of the school district shall vote for the election of the school district board of directors from single-member districts, the county election commission of the county in which the largest portion of the school district lies shall establish, within the school district, boundaries for the election of directors of the school board which shall have substantially equal population based on the most recent available census information and from which racial minorities may be represented on the board in proportions reflected in the district population as a whole.
 (d) The members of the board of directors of the school district shall be elected for a three-year term. Provided, any member of the board shall hold office until his successor has been elected and qualified. A member of the board who is qualified to serve the zone he represents may succeed himself.
 (e)(1) Following the election, the new school district board of directors at their initial meeting shall, by lot, establish their initial terms so that an equal number of positions are filled each year and not more than three (3) members' terms expire each year.
 (2) The regular term of office for the school district board of directors elected after the initial election following the decision to elect from single-member zones shall be the same as the term of the school district board of directors of the district prior to the change in the method of election of the school district board of directors.
(Emphases added.)
As the highlighted portions of this statute reflect, A.C.A. § 6-13-615
does no more than authorize an election to determine whether a school board's members will be elected from single-member zones. The statute at no point suggests that a district that converts to a system of electing board members from single-member zones must reconsider and possibly adjust the number of board members currently serving. Accordingly, in my opinion, nothing would preclude the District from simply maintaining the number of Board members at six.
Having offered this opinion, I will address your concern regarding the scope of A.C.A. § 6-13-634 (Repl. 1999), which provides in pertinent part:
 (a) As of July 1, 2000, all school districts shall have a board of directors with no fewer than five (5) and no more than seven (7) members, or no more than nine (9) members in the case of a school district having an average daily attendance of twenty-four thousand (24,000) or more.
The enactment of this statute by Acts 1999, No. 1078, § 29 triggered no requirement of action by the District, since the size of the Board fell within the range permitted by A.C.A. § 6-13-634(a). Assuming the Board were now inclined to adjust the number of its members, I believe the appropriate course would be to petition the State Board of Education to approve an adjustment falling within the parameters permitted under A.C.A. § 6-13-634(a).
Section 6-13-634 itself does not specify the procedure to be followed by a school district that either needs or desires to adjust its board membership. However, as one of my predecessors noted in the enclosed Ark. Op. Att'y Gen. No. 2000-112, which addressed the procedure for reducing the number of board members in order to comply with this statute:
 There is no clear authority for a school board to determine by policy or resolution the mechanism for reducing the number of board members to comply with Section 29 of Act 1078 of 1999 (A.C.A. § 6-13-634 (Repl. 1999) [effective July 1, 2000]. Although the matter is not entirely clear, I believe A.C.A. § 6-13-606(a) (Repl. 1999) [effective July 1, 2000] could be construed to provide the mechanism for decreasing the number of school board members in a district to comply with § 6-13-634.
The referenced A.C.A. § 6-13-606(a) provides that a district may petition the State Board of Education to decrease the number of directors on its board. Section 6-13-604(a) (Repl. 1999) authorizes a similar petition process to seek an increase in the number of directors. If the Board wishes to change the number of its members, I believe these statutes set forth the procedure for doing so.
Question 2: By whom and by what method are the boundaries of thezones to be established?
As my predecessor noted in Ark. Op. Att'y Gen. No. 2000-112, "under A.C.A. 6-13-615[c] (Repl. 1999) (local option), the county election commission establishes zone boundaries." The Code does not specify a procedure for defining zone boundaries. However, as my predecessor noted in his opinion, the county election commission may wish to retain a demographer to assist in this enterprise.
Question 3: After the number and the boundaries of the zones areestablished then by what method and by what time frame are the positionson that new board to be filled?
I believe the answer to this question is implicit in A.C.A. § 6-13-615, which provides in pertinent part:
 (d) The members of the board of directors of the school district shall be elected for a three-year term. Provided, any member of the board shall hold office until his successor has been elected and qualified. A member of the board who is qualified to serve the zone he represents may succeed himself.
 (e)(1) Following the election, the new school district board of directors at their initial meeting shall, by lot, establish their initial terms so that an equal number of positions are filled each year and not more than three (3) members' terms expire each year.
 (2) The regular term of office for the school district board of directors elected after the initial election following the decision to elect from single-member zones shall be the same as the term of the school district board of directors of the district prior to the change in the method of election of the school district board of directors.
Section 6-13-615 was enacted pursuant to Acts 1989, No. 872, §§ 1-5. I believe the just quoted excerpts from A.C.A. § 6-13-615 must be read in conjunction with §§ 4 and 5 of Act 872, which provide:
 SECTION 4. Upon passage, the length of terms of persons serving on the board of directors of a school district shall be reduced or lengthened to comply with this section. At the time of the passage, the board of directors shall draw lots to determine which zone positions their board position shall represent until a qualified board member from that zone can be elected. The board of directors shall then draw lots to stagger the lengths of terms of the various zones. The zone terms shall be staggered so that one-third, or to the nearest whole number, of the zones shall be subject to election at the next regular school election, one-third, or to the nearest whole number, shall be subject to election at the next following regular school election, and one-third, or any remaining number, of the zones shall be subject to election at the second subsequent regular school election. Thereafter, the members of the board of directors of the school district shall be elected for a three (3) year term. Provided, any member of the board shall serve until his successor has been elected and qualified. A member of the board who is qualified to serve the zone he represents may succeed himself.
 SECTION 5. Following the election, the new school district board of directors at their initial meeting shall, by lot, establish their initial terms so that an equal number of positions are filled each year and not more than three (3) members' terms expire each year. The regular term of office for the school district board of directors elected after the initial election following the decision to elect from single-member zones shall be the same as the term of school district board of directors of the district prior to the change in the election of school district board members.
It appears from § 4 of Act 872 of 1989 that the legislature intended that there be two drawings of lots upon the voters' approving the election of a board from single-member zones. The first drawing will assign each of the current board members to a particular zone, regardless of whether the member resides in that zone. The second drawing will determine how long the members assigned to particular zones will serve — a drawing that is necessary to ensure that future terms will be staggered. For example, in a six-zone district, the drawing would assign a term of one year to two zones, two years to two other zones and three years to the remaining zones. This double-drawing of lots accounts for the provision declaring that a director's term "shall be reduced or lengthened to comply with this section." Assuming a director's three-year term would otherwise have expired in one year,[2] his term would be lengthened if he were assigned by lot to a zone not scheduled for a director election for three years. Conversely, a newly elected director's term would be shortened if he were assigned by lot to a zone scheduled for a director election in the following year. By the fourth election following the voters' approval of zoned elections, all directors would reside in the zones they represent and all would serve three-year terms.
Having ventured this interpretation of the statute, I must acknowledge what I consider a contradiction within the legislation both as codified and as enacted. Subsection 6-13-615(e)(2) and the final sentence of § 5 of Act 872 mirror each other in providing:
 The regular term of office for the school district board of directors elected after the initial election following the decision to elect from single-member zones shall be the same as the term of the school district board of directors of the district prior to the change in the method of election of the school district board of directors.
As noted in footnote 1 of this opinion, the general rule regarding the permissible length of school district board members' terms is that a district may adopt any term length from three to five years, so long as all board members' terms are the same length. A.C.A. § 6-13-608(a). The passage just recited provides that, following the provisional adjustment of term length required to achieve a staggered board, see my discussion in the previous paragraph, the board members' term length in a zoned district must be the same as "prior to the change in the method of election. . . ." This would mean that if a district's board members served five-year terms before the voters converted to a district comprised of single-member zones, the members would likewise serve five-year terms when elected by zone. In my opinion, as applied to districts in which before conversion board members served four- or five-year terms, A.C.A. § 6-13-608(a) would directly conflict with the statutory directive that directors in a single-member zoned district created by local option "be elected for a three-year term." A.C.A. §6-13-615(d).
The question, then, becomes how to resolve what appears to be a direct conflict between the provisions of A.C.A. § 6-13-615(d) and the provisions of A.C.A. §§ 6-13-608(a) and -615(e). In addressing this question, I am guided by the following principles of statutory construction. First, a general statute normally does not apply where there is a specific statute governing a particular subject matter. Donohov. Donoho, 318 Ark. 637, 887 S.W.2d 290 (1994). Moreover, as the court declared in Scott v. Greer, 229 Ark. 1043, 1048-49, 320 S.W.2d 262
(1959):
 One of these rules, recognized and applied by this Court for many years, and applicable here, is: "Where general terms or expressions in one part of a statute are inconsistent with more specific or particular provisions in another part, the particular provisions will be given effect as clearer and more definite expressions of the legislative will." We have quoted the above rule from Hodges v. Dawdy, 104 Ark. 583, 149 S.W. 656. It was also recognized in Wiseman v. Ark. Util. Co., 191 Ark. 854, 88 S.W.2d 81. In 50 Am.Jur. 371 "Statutes" 367, the text states: "It is an old and familiar principle . . . that where there is in the same statute a specific provision, and also a general one which in its most comprehensive sense would include matters embraced in the former, the particular provision must control, and the general provision must be taken to affect only such cases within its general language as are not within the provisions of the particular provision." To the same effect see also 82 C.J.S. 720; and Crawford on "Statutory Construction" 189.
Applying these principles, in directing that board members will serve three years in single-member zones formed by local option, A.C.A. §6-13-615(d) is more specific than A.C.A. §§ 6-13-608(a), which generally declares that the term of school district board members may be not less than three years and not more than five years. Likewise, A.C.A. §6-13-615(d), in expressly specifying a term of years to be served by directors elected to single-member zones, is more specific than A.C.A. §6-13-615(e), which only makes a general reference to whatever term applied before the local option conversion to single-member zones. Accordingly, I believe A.C.A. § 6-13-615 should be read as imposing a three-year term of service for directors elected to single-member zones based upon a local option election.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:JD/cyh
[1] In Ark. Op. Att'y Gen. No. 92-253, one of my predecessors reported that the Cross County School District (the "District") was formed in 1967. The creation of a six-member board resulted not from agreement among the consolidating districts, but rather from the fact that A.C.A. §§ 6-13-301 through — 311 mandated that when three school districts consolidate, the new board must comprise six members, two from each former district. The subchapter imposing this requirement was repealed by Acts 1993, No. 294, § 7. My predecessor discussed this issue in the course of addressing whether the District could divide each of the former constituent districts into two zones of roughly equal population and then elect the new Cross County School District Board (the "Board) from single-member zones. My predecessor concluded that this would be impermissible under A.C.A. § 6-13-615(c), which would require that all
zones within the District have roughly equivalent populations, not just the zones within each of the consolidated districts.
[2] Section 6-13-608(a) of the Code (Repl. 1999), which generally sets forth the permissible length of school district directors' terms, provides:
 All members of a school district board of directors shall be elected to a term of office of not less than three (3) years nor more than five (5) years in length and with the expiration of such terms so arranged that, as nearly as possible, an equal number of positions are filled each year. All members of a school district board of directors shall have terms of office of equal length.
I am unaware of whether the current board members were each elected to a term of three, four or five years. However, in the wake of the 2004 election, I believe their respective terms are subject to adjustment pursuant to the formula discussed in my text.