STATE *ex rel.* LITTLE ROCK *v.* DONAGHEY.

Opinion delivered December 23, 1912.

1.  MANDAMUS—ELECTION COMMISSIONERS.—The State Board of Election Commissioners will not be compelled by *mandamus* to canvass the election returns and declare the adoption of proposed Amendment No. 15 to the Constitution of Arkansas, where three amendments to the Constitution have been proposed and voted upon at the same election at which proposed Amendment No. 15 was voted upon. (Page 65.)

2.  CONSTITUTIONAL LAW—EFFECT OF AMENDMENT.—Article 19, section 22, of the Constitution of Arkansas of 1874 which provides that only three amendments to the Constitution shall be submitted at the same time, is not so changed by Amendment No. 10, to the Constitution of Arkansas, which provides for the initiation of amendments by the people, as to permit the submission of more than three amendments to be voted on at the same time.    (Page 65.)

3.  AMENDMENTS TO THE CONSTITUTION.—The Legislature having proposed two amendments to the Constitution, the people acting under Amendment No. 10, have authority to propose only one additional amendment to be voted on at the same election.   (Page 66.)

4.  SAME.—The three amendments to be submitted may be proposed by the Legislature or the people, but the three which shall be voted upon are to be determined by the priority of time of their being proposed. (Page 66.)

5.  CONSTRUCTION OF AMENDMENTS.—Amendments and previous provisions of the Constitution are to be harmonized where not necessarily inconsistent or repugnant.   (Page 64.)

Appeal from Pulaski Circuit Court, Second Division; *F. Guy Fulk,* Judge; affirmed.

STATEMENT BY THE COURT.

This suit was brought to compel by mandamus the State Board of Election Commissioners to canvass the returns and declare the adoption of proposed Amendment No. 15 to the Constitution of Arkansas, initiated by 8 per cent. of the voters, it being alleged that same had been duly submitted in accordance with law and adopted, receiving at said election 76,660 votes in its favor, with only 53,089 votes against it, and by the terms of said amendment the said board was authorized and required to declare its adoption.

A demurrer and response was filed to the petition, in which it is denied that at the general election the alleged proposed amendment was duly submitted to the people, and alleged it was improperly submitted, in violation of art. 19, § 22, of the Constitution, which provides that no more than three amendments shall be proposed or submitted at the same time.

It is further alleged that the General Assembly of 1911 proposed two amendments to the Constitution to be voted on at the election of 1912, numbered 11 and 12, respectively and that the people, acting under the authority of Amendment No. 10, to the Constitution, initiated another proposed amendment, thereto, numbered 13, limiting the session of the General Assembly to sixty days.

That, after the petition containing the requisite number or signatures for the initiation of said proposed Amendment No. 13 was filed with the Secretary of State, the petition for

the initiation of said proposed Amendment No. 15 was filed, and same was improperly submitted to the electors in violation of the Constitution.

The response admits the number of votes cast for and against the amendment, as alleged, and denies that same was duly adopted, having failed to receive a majority of the votes cast at such election, the number cast for the office of Governor being 169,469.

The response further admits that the board refused to canvass the returns upon the amendment, because they were without authority of law to do so,

A demurrer was interposed to the response, which being overruled by the court and the petitioners declining to plead further, judgment was rendered against them, and from it this appeal comes.

*Harry C. Hale, Cockrill & Armistead, Coleman & Lewis* and *Rose, Hemingway, Cantrell & Loughborough,* for appellant.

1.   Neither of the two provisions of sect on 22, article 19, of the Constitution applies to or governs amendments to the Constitution submitted to the people under the initiative power conferred by Amendment No. 10.

Section 22 governs and controls the method of proposing and submitting amendments passed by the legislative assembly only.   If the provision of the Constitution limiting the Legislature to the submission of three amendments applies to submission of amendments by the people under the initiative power, then the provision of the Constitution relative to the passage of laws by the Legislature also govern  bills enacted by the people.   It can not seriously be contended that the requirements that every bill shall be read at length three different times in each house, etc., or that every enacted bill shall be presented to the Governor, etc., apply to the people's bills.   93 Pac. (Ore.) 237; 59 Ore. 19, 115 Pac. 1057; 93 Pac. (Ore.) 254; 91 Pac. 546; 111 Pac. (Okla.) 803.

2.   Amendment No. 10 clearly shows an intention not to limit the people to the submission of three proposals at once, and also expressly requires only a majority of the votes cast on the question.   It is the last expression of the real makers of the Constitution.   59 Ark. 333.   If there is any incon-

sistency between the Constitution of 1874 and Amendment No. 10, the latter controls. 136 Ga. 313; 71 S. E. 479; 83 Ohio. St. 412; 124 Pac. 175; 55 Ore. 303. The vice of the argument that Amendment No. 10 and section 22 of article 19 should be read together as though they were originally a part of the Constitution, and that the limitations found in section 22 apply to Amendment No. 10 in the absence of any express repeal or contradictory expressions, is that there was no such thing as a people's initiative method of amendment under the Constitution of 1874. As to rule of construction of amendments, see 8 Cyc. 749; 8 Ark. 436.

3. Amendment No. 10 specifically provides that constitutional amendments shall be adopted by a majority of the votes cast thereon.

The word "measure" used therein includes constitutional amendments, and the phrase "referred to" is used in the sense of "submitted to," either by the initiative or referendum. See 6 Thorpe, American Charters, 3404; *Id.* 3018; 7 *Id.* 4278; 109 Pac. (Okla.) 823; 111 Pac. (Okla.) 802; 109 Pac. (Okla.) 658; 124 Pac. 176; 114 Pac. 293; Cooley, Constitutional Limitations, 76; 8 Miss. 14; 20 N. E. (Ohio.) 461.

4. "Practical construction of constitutional provisions by the legislative department, in the enactment of laws, * * * has great weight with the judiciary." 8 Cyc. 736.

The Legislature of 1911 has given the construction to Amendment No. 10 maintained by appellant. See the enabling act.

5. The ministerial duty devolves on appellees to declare Amendment No. 15 adopted. If the last provision of Amendment No. 15 be viewed as having simply the force and effect of an act of the Legislature, it still accomplishes the repeal of section 16 of the enabling act so far as concerns this amendment. Amendment No. 15, however, is more than an act of the people. It is a constitutional amendment adopted by the people in their constitution-making capacity, and accomplishes not only the repeal of prior inconsistent acts of the Legislature, but also prior inconsistent sections of the Constitution itself. Otherwise the Legislature is superior in its power to the body of the people. 6 Am. & Eng. Enc. of L. 909; 34 Fla. 500; 19 Col. 448; 82 Mich. 573; 15 Tex. App. 150;

42 N. Y. 276; 33 S. W. 1130; 132 Mo. 410; 78 Ark. 432, 443; 78 Md. 152; 48 Ore. 309; 115 Pac.· (Ore.) 1057.   See, also, 8 Cyc. 743; 9 Ind. 20; 1 Ind. 24; 21 Minn. 22; 52 Tex. 252.

*Hal L. Norwood,* Attorney General, and *Wm. H. Rector,* Assistant, for appellees.

1.   The State Board of Election Commissioners has no authority to canvass the returns upon constitutional amendments.   The paragraph of Amendment No. 15 providing that the returns shall be canvassed by the State Board of Election Commissioners is not effective because the board can not look to Amendment No. 15 to find its authority to canvass the returns of the election on that amendment.   230 Mo. 417.   "A constitutional amendment does not become operative upon the casting in its favor of the necessary majority of votes, but only upon the true promulgation of the result."· Black's Constitutional Law, 49, and authorities cited.

2.   Only three proposed amendments can be submitted at the same time.   Article 19, § 22, Const.   The rules laid down in article 19, § 22, are in full force and govern all proposed amendments to the Constitution except where Amendment No. 10 has changed them, or they have been changed by the enabling act, under the authority of that amendment.

The Legislature has no authority under Amendment No. 10, to change any of the rules laid down in article 19, § 22, of the Constitution, except where such change is specifically authorized by the amendment.

Sections 3 and 16 of the enabling act, providing that any general measure or amendment to the Constitution shall be in force and effect when it has received a majority of the legal votes cast thereon is valid, insofar as it relates to acts, but invalid as to amendments to the Constitution, because it conflicts with article 19, § 22.

3.   There is nothing in Amendment No. 10 authorizing the submission of more than three amendments.   The General Assembly that proposed this amendment and the people who approved it are presumed to have been familiar with the limitations of the Constitution.   The failure to repeal or amend the Constitution in this particular, and there being no conflict whatever between the amendment and the original provision

of the Constitution, the latter must stand. *Hodges* v. *Dawdy,* 104 Ark. 583; 230 Mo. 417; 9 Ark. 282.

The amendment must be read in connection with the whole Constitution, and if the words of the amendment are susceptible of two constructions, either of which is warranted by the words of the amendment, that construction is to be preferred which best harmonizes the amendment with the general terms, tenor and spirit of the whole Constitution. 93 Ark. 228; 27 Ark. 648; 60 Ark. 343; 12 Ark. 101; 2 Ark. 98; 4 Ark. 473; 9 Ark. 282.

4. The Constitution can only be amended in the manner provided by the instrument itself. 128 Mo. 106; 24 Ala. 100; 60 Ia. 543; 77 Miss. 543; 133 N. Y. S. 1143; Jamison, Constitutional Conventions, (4 ed.) 617; 44 Ore. 118; 48 Ore. 319.

KIRBY, J., (after stating the facts). Can more than three amendments to the Constitution be proposed or submitted to the people at the same time or election for their approval or rejection?

The people are the source of all political power, and it has never been doubted that according to the institutions of this country the sovereignty of every State resides in the people of the State, and they can alter or change their form of government at their own pleasure. Whether they have done so, is a question to be settled by the political power, and when that power has decided, the judiciary can but follow and sustain its action.

But whether an amendment to the State Constitution has been adopted in accordance with its requirements is a question for judicial determination. *Rice* v. *Palmer,* 78 Ark. 432; 96 S. W. 396; *St. L. S. W. Ry. Co.* v. *Kavanaugh,* 78 Ark. 468, 96 S. W. 409.

"The most that can be said is that when the soverign body has clearly moved and that movement gives evidence of irresistible force, the various systems of officials constituting the existing government, including courts, must heed and bow to it, or else go down before it." *Mack* v. *Johnson,* 59 Ark. 333.

Article 19, § 22, of the Constitution of the State of Arkansas (1874) and Amendment No. 10, the Initiative and Referendum Amendment thereto, provide the methods of amending the Constitution. Section 22 of article 19 provides how amend-

ments to the Constitution may be proposed and submitted to the people by the General Assembly, the number of votes required for their adoption and, "but no more than three amendments shall be proposed or submitted at the same time. They shall be so submitted as to enable the elector to vote on each amendment separately."

Before the adoption of Amendment No. 10, the Legislature was the only agency authorized to propose amendments to the Constitution for the approval of the people and Amendment No. 10 provides: "The legislative powers of this State shall be vested in a General Assembly, which shall consist of the Senate and House of Representatives, but the people of the State reserve to themselves the power to propose laws and amendments to the Constitution and to enact or reject the same at the polls as independent of the legislative assembly, and also reserve power at their own option to approve or reject at the polls any act of the legislative assembly. The first power reserved by the people is the initiative, and not more than 8 per cent. of the legal voters shall be required to propose any measure by such petition, and every such petition shall include the full text of the measure so proposed. Initiative petitions shall be filed with the Secretary of State not less than four months before the election at which they are to be voted upon."

Under this amendment 8 per cent. of the legal voters are authorized to propose an amendment to the Constitution in accordance with its provisions, and it furnishes another method of submitting amendments to the Constitution. Unquestionably, the provisions of section 22, article 19, prohibiting the submission of more than three amendments at the same time is conclusive upon the power of the General Assembly to submit them, and, unless this prohibition is altered or amended by Amendment No. 10, authorizing the submission of amendments by this other agency, it will be binding likewise upon its power.

It was not the purpose nor the intention of the people in the adoption of Amendment No. 10, the Initiative and Referendum Amendment to the Constitution, to abrogate and destroy the Constitution of the State, the framework of its government, by substituting therefor the provisions of said

amendment. They reserved to themselves thereby the power "to propose laws and amendments to the Constitution and to enact or reject the same at the polls, as independent of the legislative assembly," a power theretofore committed exclusively to the General Assembly—the right to submit amendments to the Constitution, upon the initiative of 8 per cent. of the legal voters—making no mention nor suggestion in this reservation of power, as to the number of amendments that can be submitted at any one time. There is no intimation in it of an intention to propose or adopt amendments to the Constitution, independent of the provisions of the Constitution, nor otherwise than in accordance with its requirements, as modified by the amendment.

As said in *Hodges* v. *Dawdy*, 104 Ark. 583: "The constitutional amendment whereby the people of the State reserve to themselves the power to legislate directly by the initiative or referendum does not abrogate the existing Constitution and laws of the State, except such provisions as are necessarily repugnant thereto. (Citing cases). The amendment being the last expression of the popular will in shaping the organic law of the State, all provisions of the Constitution which are necessarily repugnant thereto must, of course, yield, and all others remain in force. It is simply fitted into the existing Constitution, the same as any other amendment, displacing only such provisions as are found to be inconsistent with it. * * * In the construction of its terms and in the determination of its scope and effect, the courts should follow settled rules of interpretation."

In *State* v. *Roach*, 230 Mo. 408, cited in the Dawdy case the court said: "The rules and principles applicable to the submission of constitutional amendments to the voters of this State are applicable alike to amendments proposed to the Constitution under the initiative and referendum amendment, or amendments proposed by the General Assembly of this State."

"No interpretation of the amendment should be allowed, which would conflict with any other provision of the Constitution, or which is not absolutely necessary in order to give effect to the amendment. Such construction should be given as will, if possible, leave all the other provisions of the Constitution unimpaired and in full force."

"The doctrine relating to repeals and amendments by implication applies alike to Constitution and statutes, and requires that earlier expressions yield when necessary to give effect to the latest expressions of the intention of those entitled to control." *State* v. *Creamer,* 83 Ohio St. 412.

"If an amendment duly adopted conflicts with a previous provision, the amendment, being the last expression of the will of the people, will prevail as an implied modification *pro tanto* of the former provisions." *Hammond* v. *Clark,* 136 Ga. 313; 71 S. E. 479.

The Oregon court, construing its amendment, said: "The initiative amendment to the Constitution necessarily carried with it all powers essential to make its provisions effective, and any part of the Constitution previously in force inconsistent therewith was necessarily repealed." *State* v. *Langworth,* 55 Ore. 303.

For other authorities, showing the proper rule of construction to be that the amendment and the previous provisions of the Constitution are to be harmonized, when not necessarily inconsistent and repugnant, see *State* v. *Clay County,* 93 Ark. 228; *Greenwood* v. *Maddox,* 27 Ark. 648; *State* v. *Martin,* 60 Ark. 343; Ex parte *Ellis,* 12 Ark. 101; *State* v. *Scott,* 9 Ark. 282; *Pulaski County* v. *Irvin,* 4 Ark. 473; Ex parte *Jones,* 2 Ark. 93; 8 Cyc. 749; *Printing Co.* v. *Shafroth,* 124 Pac. (Col.) 175.

The people in making the Constitution, in their wisdom declared that no more than three amendments to the Constitution shall be submitted at the same time by the power authorized therein to submit amendments for their consideration and adoption. That was their sole agency authorized to submit amendments to the Constitution and the restriction and prohibition was conclusive upon it. Since then, they have proceeded in accordance with the requirements of the Constitution for the submission of amendments to it, adopted Amendment No. 10 thereto, reserving to themselves, or 8 per cent of the voters the like power to submit amendments to the Constitution, independently, it is true, of their other agency, the Legislature, but necessarily in accordance with the provisions of their Constitution as amended.

The people are the whole power and in the exercise of

their power have set limitations upon themselves by the Constitution and their right to the exercise of it, and their "Thus far shalt thou go and no further," binds them and all their agencies for the submission of amendments to the Constitution, which is their expressed will, conclusive upon their supreme power and subordinate agencies, alike. The Legislature does not exercise the power of the people under the provisions of their Constitution, the chart for legislative guidance, and if they shall submit as many amendments to the Constitution at a session of the Legislature, as can, under the constitutional limitation be submitted, it must be conclusively presumed that all are submitted that are necessary to the public welfare, and no initiative petition can be filed after three amendments are duly submitted by the General Assembly proposing an additional amendment to be passed upon at the same election. The contention that the General Assembly can preclude the people from submitting amendments by its action in proposing three amendments to the Constitution before any are initiated by 8 per cent. of the voters is no reason for construing the provisions of Amendment No. 10 reserving the right to the people to submit amendments to the Constitution, "as independent of the legislative assembly" as in conflict with the prohibition in said section 22, of article 19. There is likewise nothing to prevent the people, if 8 per cent. of the voters shall think the welfare of the State demands that it shall be done from proposing three amendments to the Constitution by initiative petitions before any are proposed by the Legislature, and if three are duly proposed in accordance with the provisions of said Amendment No. 10 the Legislature will likewise be precluded from proposing or submitting further amendments to the Constitution at the same time or election.

The people can now exercise this power of amendment through either of two agencies, the General Assembly, or upon initiative petitions of 8 per cent. of the legal voters— but they can not exercise it through either agency otherwise than in accordance with the provisions and limitations of the Constitution, which apply alike to both and limit the number of amendments that can be proposed or submitted at the same time, through either or both agencies to three. It is

the people acting in any event, through either agency and the constitutional prohibition operates alike upon both. They will not be engaged or disturbed with considering more than three amendments at the same time, without regard to what agency proposes or submits them. The General Assembly having proposed two amendments to the Constitution, numbered 11 and 12, and the voters having by initiative petition proposed another numbered 13, making three in all proposed for submission at the same time, before the filing of the petition proposing said Amendment No. 15, it was attempted to be submitted in violation of the Constitution and could not therefore have been adopted.

The majority of the court are of the opinion that it is not necessary to the decision herein that the other two questions presented, shall be decided in this case.

It follows from the decision that the judgment of the circuit court in denying the application for mandamus was correct and it is affirmed.

Justices WOOD and SMITH dissent.

WOOD and SMITH, JJ.     Section 22, of article 19, of the Constitution of 1874 is as follows:

"Either branch of the General Assembly at a regular session thereof may propose amendments to this Constitution and, if the same be agreed to by a majority of all the members elected to each house, such proposed amendment shall be entered on the journals with the yeas and nays, and published in at least one newspaper in each county, where a newspaper is published, for six months immediately preceding the next general election for Senators and Representatives, at which time the same shall be submitted to the electors of the State for approval or rejection; and if a majority of the electors voting at such election adopt such amendments the same shall become a part of this Constitution; but no more than three amendments shall be proposed or submitted at the same time. They shall be so submitted as to enable the electors to vote on each amendment separately."

In *St. Louis S. W. Ry. Co.* v. *Kavanaugh,* 78 Ark. 468, it is said: "The clause of the Constitution providing for the submission of constitutional amendments (art. 19, § 22) was not self-executing, and required legislation to effectuate its purpose."

The Legislature passed an enabling act providing for the proposal, submission and adoption of amendments to the Constutition under the above provision thereof, which enabling act is to be found in chapter 27 of Kirby's Digest. It is there provided that amendments shall be proposed by joint resolution in either branch of the General Assembly, to be read in full on three several days unless the rules are suspended, and on final passage through each house the vote shall be taken by yeas and nays and the names entered on the journal, showing the majority, in order to propose the amendment. On its passage the amendment must be enrolled, signed by the President of the Senate the Speaker of the House and by the Governor. The Governor must number the amendment in the order of its approval, and file the same in the office of the Secretary of State. The Secretary of State must publish the proposed amendment in the manner prescribed in the statute, the method of publication and the form of the ballot being specifically set forth.

Section 1 of Amendment No. 10 to the Constitution, providing for the Initiative and Referendum, is as follows:

"The legislative powers of this State shall be vested in a General Assembly, which shall consist of the Senate and House of Representatives, but the people * * * reserve to themselves power to propose laws and amendments to the Constitution and to enact or reject the same at the polls as independent of the legislative assembly, and also reserve power at their own option to approve or reject at the polls any act of the legislative assembly. The first power reserved by the people is the initiative and not more than 8 per cent. of the legal voters shall be required to propose any measure by such petition, and every such petition shall include the full text of the measure proposed. Initiative petitions shall be filed with the Secretary of State not less than four months before the election at which they are to be voted upon."

Then follows the provision as to the referendum, and the section concludes: "All elections on measures referred to the people of the State shall be had at the biennial regular general election, except when the legislative assembly shall order. a special election. Any measure referred to the people shall take effect and become a law when it is approved by a

majority of the votes cast thereon, and not otherwise. * * * The whole number of votes cast for the office of Governor at the regular election last preceding the filing of any petition for the initiative or for the referendum shall be the basis on which the number of legal votes necessary to sign such petition shall be counted. Petitions and orders for the initiative and for the referendum shall be filed with the Secretary of State, and in submitting the same to the people he and all other officers shall be guided by the general laws and the acts submitting this amendment until legislation shall be specially provided therefor."

In *Arkansas Tax Commission* v. *Moore,* 103 Ark. 48, we held that the provisions of Amendment No. 10 were self-executing, but that inasmuch as the amendment itself specifically provided for further legislation to make the provisions effectual the Legislature might "make all other laws thought desirable to facilitate the exercise of the right in its full enjoyment."

The Legislature of 1911 did pass an enabling act (Act 2, p. 582, Acts 1911). This act prescribes specifically how the amendments to the Constitution shall be proposed by the people. Among other things it provides: "Eight per cent of the legal voters of the State may, at any time more than four months before any regular general election propose an amendment to the Constitution of the State or any measure of general application to the State." Then follows a form of initiative petition, addressed to the Secretary of State, to be signed by the legal voters. The act requires that to every petition "shall be attached a full and correct copy of the title and the measure proposed."

Among the various provisions are the following. "When any measure is proposed by the initiative petition and said petition shall be filed with the Secretary of State, as provided in this act, the Secretary of State shall forthwith transmit to the Attorney General of the State a copy thereof, and within ten days thereafter the Attorney General shall provide and return to the Secretary of State a ballot title for said measure; said title so provided by the Attorney General shall express the purpose of the measure, and this title measure shall be printed on the official ballot.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

"No petition for the initiative shall be accepted, filed or considered by the Secretary of State unless the same shall contain 8 per cent. of the legal voters of the State, if a State law or an amendment to the Constitution of the State." Then follow provisions as to the basis upon which the Secretary of State shall ascertain the number of legal voters necessary to sign any petition for the initiative, and for the form of the ballot; then a provision for the publication of the measures to be submitted and for the ascertaining of the results of the election and for the declaring of the same. It is provided that all amendments to the Constitution shall be declared adopted or rejected by the Speaker of the House of Representatives as now provided by the Constitution; and that, "if two or more conflicting amendments to the Constitution shall be approved by the people at the same election, the amendment receiving the greatest number of affirmative votes shall be paramount in all particulars as to which there is a conflict." And, further, "that if two or more measures shall be approved at said election which are known to conflict with each other, or to contain conflicting provisions, he (the Governor) shall proclaim which is paramount in accordance with the provisions of this act."

There is a further provision to the effect that the Governor shall issue his proclamation giving the whole number of votes cast in the State for and against each measure and question and declaring such measures as are approved by a majority of those voting thereon to be in full force and effect as the law of the State; and then a final provision repealing all laws in conflict.

A comparison of the provisions of section 22 of article 19, of the Constitution and its enabling act with the provisions of Amendment No. 10 and its enabling act, set out above, will discover two radically different and wholly independent plans for the submission and adoption of amendments to the Constitution. The one, representative, by the Legislature, the other direct, by the people themselves.

It is certain that the able and patriotic men who framed the Constitution of 1874 and the people who adopted it intended that the provisions of section 22 of article 19 of that

instrument should apply only to amendments that were proposed and submitted by the Legislature. They could not have intended that the limitation "but no more than three amendments shall be proposed or submitted at the same time," should apply to amendments that might thereafter be proposed by the people through the method of the initiative power; for the provisions of section 22 article 19 were adopted over a third of a century before the initiative and referendum under Amendment No. 10 came into existence.

The framers of section 22 of article 19, and the people who adopted it, intended that its provisions and limitations should apply only to amendments proposed by the General Assembly, to whom were delegated at that time the whole power of proposing amendments to the Constitution.

Now unless there is something in the language of Amendment No. 10 that shows an intention on the part of the people to impose the same limitation on their power to propose amendments as is contained in section 22 of article 19, then it is not within the power of the court to supply that language, and it can not be held that the people intended any such limitation on their power. The language of Amendment No. 10 does not limit the number of amendments that the people may propose and have submitted under their initiative power. On the contrary, "the people reserve to themselves power to propose laws and amendments to the Constitution," without any limitation whatever as to the number of such amendments.

The framers of Amendment No. 10 were familiar with the provisions of section 22 article 19 of the Constitution and knew that the "no more than three" limitation therein contained applied only to amendments proposed by the Legislature. Is it not reasonable to conclude that if they had intended the same limitation to apply to amendments proposed by the people that they would have said so in plain terms? They have not done so and the court can not do so for them. This was a function of the Legislature, and the very instrument we now construe forbids the court from exercising legislative functions.

If the provision was: "But no more than three amendments shall be proposed or submitted at the same time when proposed by the Legislature, or by a constitutional convention,

or any other method that the people may hereafter adopt," then appellees' contention on this point would be correct. But this is not the language.

We know of no rule of construction to warrant the court in segregating the clause "but no more than three amendments shall be proposed or submitted at the same time" from all the other language in section 22, article 19, of the Constitution, where it applies solely to amendments proposed by the Legislature, and reading that language into Amendment No. 10, which applies solely to amendments proposed by the people through the initiative power. The language of Amendment No. 10, reserving to the people the power to propose amendments to the Constitution "as independent of the legislative assembly," shows that the people did not intend that the provision of the Constitution which should control amendments proposed by the Legislature should also apply to amendments proposed by the people.

But, under the construction given by the majority to the provision of the Constitution, if the Legislature should propose three amendments before the people proposed any, that shuts the people out from the right to propose any at all under Amendment No. 10, and, in such case, renders the amendment of no avail to the people. Or, if the Legislature has proposed a less number than three, then the people could only propose the number necessary to make three amendments. If the Legislature should submit two amendments, then the people could only propose one. Such a construction, instead of making the 'right of the people "independent of the legislative assembly," makes it absolutely dependent thereon Under such a construction, unless the people should choose to exercise their right under Amendment No. 10 always before the legislative assembly convenes they would be entirely dependent upon the action of the General Assembly as to the number of amendments they could propose.

Certainly these constitutional amendments should not be construed so as to force the people who desire to propose amendments under Amendment No. 10 to make the "race for the goal" before the Legislature convenes. Such construction, in our opinion, is in contravention of the plain language of Amendment No. 10. We are unable to under-

stand how the people can propose amendments and enact same "as independent of the legislative assembly" when the legislative assembly, by proposing amendments first, has the power, to the extent of the number proposed by it, of preventing the people from proposing amendments to the Constitution. This might be a proper construction if the language of the amendment were as follows: "The people reserve to themselves power to propose laws and amendments to the Constitution and to enact or reject the same at the polls, provided they do so before the Legislature proposes any, or if the Legislature has first proposed amendments to the Constitution and has proposed a less number than three, then the people may propose the remainder." But Amendment No. 10 is not so phrased, and, to borrow the figure of learned counsel in oral argument, it seems to us that a vast deal of judicial surgery is required to lop off and supply all the parts necessary to bring the body of our law into the shape fashioned by the opinion of the majority.

It is not a correct construction of these constitutional provisions to say that their purpose is subserved whether the amendments are proposed by the Legislature, or proposed by the people; that when three amendments are proposed either by the Legislature or by the people, that the intention of the people in the adoption of Amendment No. 10 is equally as well carried out as if three amendments had been proposed by the people themselves. This construction ignores the very purpose of Amendment No. 10. Any one at all familiar with the history of that amendment knows that it had its origin in a desire on the part of the people to reserve to themselves power to propose amendments to the Constitution and to take away from their representatives in the General Assembly the entire power of proposing amendments, which had before been delegated to them. For reasons satisfactory to themselves, which it is not important here to discuss, the people were unwilling to longer delegate to their representatives in the General Assembly the sole power of legislation and of proposing amendments to the Constitution. The adoption of Amendment No. 10 is an expression of the will of the people to enact laws and propose amendments to the Constitution on their own initiative and independent of the

Legislature, as is declared in the amendment. The purpose of the framers of Amendment No. 10 and the people who adopted it is entirely thwarted where the people themselves are not permitted on their own initiative to propose amendments to the Constitution.

Judge Cooley says, "The object of construction, as applied to a written Constitution, is to give effect to the intention of the people in adopting it. In the case of written laws, it is the intention of the law-giver that it is to be enforced, but this intention should be found in the instrument itself." Cooley's Const. Lim. (7 ed.), page 89.

Under any correct construction of these constitutional provisions, neither the Legislature nor the people, in their right to propose amendments to the Constitution, are left to the haphazard of whether one or the other has already exercised the power. The power granted to the Legislature is only limited by the number of amendments that it may propose. In other respects, it is independent of anything that the people may do. And likewise, the power of the people to propose amendments is independent and unhampered by anything the Legislature may do. While the people and the Legislature have concurrent power to propose amendments, this power is exercised independent of each other.

We are not concerned about the policy of Amendment No. 10, or the amendment under consideration, proposed in accordance with its provisions. The people are the source of all power under our republican form of government and they have spoken. As we said in the case of *Johnson* v. *Mack,* 59 Ark. 333: "The people are sovereign and when the sovereign body has clearly moved, and that movement gives evidence of irresistible force and continuance, the various systems of officials constituting the existing government must heed and bow to it, or go down before it."

The Legislature in the enabling act of 1911 has given the same construction to Amendment No. 10 as we now give it. In sections 14 and 16 of that act, it is shown that the Legislature contemplated that numbers of conflicting amendments might be proposed under Amendment No. 10 and its provisions, and that the conflicting amendment receiving the greatest number of votes should be paramount. No restriction is

found in the act as to the number of amendments that may be proposed. While the construction given by the Legislature is not conclusive on the courts, yet it is strongly persuasive, and, in our opinion, is absolutely correct. "Practical construction of the provisions by the legislative department in the enactment of laws, necessarily has great weight with the judiciary." (8 Cyc. 736).

We find no limitations as to the number of amendments that the people may propose to the Constitution in Amendment No. 10, reserving to the people that power and no limitation as to number anywhere else in the Constitution, applicable to this power when exercised by the people.

Unless the power conferred upon the Legislature and the power reserved by the people to themselves to propose amendments are separate and distinct powers, wholly independent of each other, then our organic law and enabling statutes are a composite of incompatible and conflicting provisions. It is our duty to construe the various provisions of the Constitution and statutes so as to make them fit into each other, if possible, and make the same a consistent and harmonious whole. *State* v. *Roach*, 230 Mo. 408; *Hodges* v. *Dawdy*, 104 Ark. 583. This can be done only in the manner we have indicated. But if the conflicting provisions are not thus harmonized, then Amendment No. 10, being the last expression of the popular will, must prevail, and as it contains no limitation as to the number of amendments that may be proposed, the people, complying with its other provisions, may submit an many amendments as they choose. See *State* v. *Cox*, 8 Ark. 436; *Hammond* v. *Clark*, 136 Ga. 313; *State* v. *Creamer*, 83 Ohio St. 412; *Post Printing & Pub. Co.* v. *Shafroth*, (Col.) 124 Pac. 175; *State* v. *Langworth*, 55 Ore. 303.