GRANT *v.* HARDAGE.

Opinion delivered February 10, 1913.

1. CONSTITUTIONAL AMENDMENT—ADOPTION—JUDICIAL QUESTION.—The Constitution of 1874 makes no provision for the exclusive determination by the Speaker of the House of Representatives as to whether an amendment has been adopted in the constitutional method, and the declaration of the Speaker, is not conclusive of the question. Whether an amendment has been properly adopted according to the requirements of the existing Constitution is a judicial question. (Page 508.)

2. SAME—SAME—JURISDICTION OF CHANCERY COURT.—The chancery court is without jurisdiction to enjoin the Speaker of the House of Representatives from declaring the adoption of an amendment to the Constitution. (Page 508.)

3. SUPREME COURT—PRACTICE.—When a question affects the interests of all the people of the State and if it is not determined, confusion and injurious consequences might result, where it may properly do so the Supreme Court will take jurisdiction and determine the question on its merits. (Page 508.)

4. CONSTITUTIONAL LAW—CONSTRUCTION OF AMENDMENT.—Amendments to a Constitution are not regarded as if they had been parts of the original instrument, but are treated as having a force superior to the original to the extent to which they are in conflict.— (Page 509.)

5. SAME—SAME.—Such a construction should be put upon an amendment as will give effect to it and not defeat the obvious intention of its framers, and where the amendment conflicts with some preexisting clause of the Constitution, the latter must yield. .(Page 509.)

6. CONSTITUTIONAL LAW—CONSTRUCTION OF AMENDMENTS.—Section 22, article 19 of the Constitution provides that proposed amendments shall be published for six months immediately preceding the election at which they are to be voted upon. Amendment No. 10 provides that initiative petitions shall be filed with the Secretary of State not less than four months before the election at which they are to be voted upon. *Held*, the two provisions are in irreconcilable conflict, and that article 19, section 22, in regard to the publication of proposed amendments to the Constitution does not apply to proposed amendments initiated under Amendment No. 10. (Page 510.)

7.  CONSTITUTIONAL LAW—CONSTRUCTION OF AMENDMENTS.—While the first three amendments proposed in the manner provided by the Constitution are all that can be legally submitted at one election, the subsequent act of submitting additional amendments can not have the effect of avoiding those amendments legally voted upon. State *ex rel.* v. Donaghey, 106 Ark. 56.  (Page 511.)

8.  JUDICIAL NOTICE—PUBLIC RECORDS—JOURNALS OF LEGISLATURE.—The Supreme Court will take judicial notice of the records of the office of the Secretary of State and of the journals of the Senate and House.  (Page 512.)

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; affirmed.

STATEMENT BY THE COURT.

This is an action brought by G. L. Grant, a member of the House of Representatives of the present General Assembly, against Joe Hardage, as Speaker of the House of Representatives, to enjoin him from declaring Amendment No. 13, submitted at the last general election, under authority of Amendment No. 10, adopted as required by section 718, Kirby's Digest.

It is admitted in the complaint that the proposed amendment received 103,246 votes and that only 33,397 were cast against it.  It is alleged, however, that the proposed amendment was only published by the Secretary of State for a period of six weeks before the election, whereas under the Constitution it is required to be published for a period of six months.

It is also alleged that said amendment was illegally submitted to the electors of the State, in this, that more than three proposed Constitutional amendments were submitted to the electors of the State at the same time.

The Attorney General demurred to the complaint. The demurrer was sustained, and the cause is here on appeal.

*Ira J. Mack, Rector & Sawyer* and *T. S. Osborne,* for appellant.

*William L. Moose,* Attorney General, and *Jno. P. Streepey,* Assistant on the brief, and *Hal L. Norwood* in oral argument, for appellee.

HART, J. It is insisted by the Attorney General that the chancery court was without jurisdiction in the cause, and in this position we think he is correct. The Constitution is the paramount law of the land and makes no provision for the exclusive determination by the Speaker of the House of Representatives as to whether an amendment has been made in the constitutional method. The declaration of the Speaker that the proposed amendment has been duly adopted by the people of Arkansas and the proclamation of the Governor to that effect, as provided in section 718, Kirby's Digest, serves the purpose of informing the people that a change has been made in the Constitution, but the Constitution does not make it conclusive on the question. When the Constitution was submitted for ratification as a whole, a provision was made for a proclamation of the result by the Governor. But in reference to amendments there is no method of determination provided by the Constitution. Therefore, we have held, in effect, that whether an amendment has been properly adopted according to the requirements of the existing Constitution, is a judicial question. *Rice* v. *Palmer,* 78 Ark. 432; *St. Louis Southwestern Railway Company* v. *Kavanaugh,* 78 Ark. 468. It follows then that the plaintiff could suffer no injury by the Speaker declaring that the amendment has been adopted, and the Court had no jurisdiction to hear and determine the cause.

The General Assembly of the State is now in session and the question of the adoption of Amendment No. 13 is one that indirectly, at least, affects the interest of all the people of the State. On this account the Attorney General has requested a decision of the case on its merits, and we have concluded to accede to his request, in order to prevent the confusion and injurious consequences which might result to the people of the State if we do not determine the question.

See *State, Ex rel, etc.,* v. *Donaghey, et al.,* 106 Ark. 56.

Section 22, article 19, of our Constitution, provides that amendments proposed to the Constitution shall be published for six months immediately preceding the next general election. Amendment No. 10 provides that, "Initiative petitions shall be filed with the Secretary of State not less than four months before the election at which they are to be voted upon." The language we have just quoted from Amendment No. 10 does not in express terms purport to repeal or modify section 22, article 19 of the Constitution, and if it does so at all, it is by necessary implication resulting from a repugnancy between the section of the Constitution and the amendment. To determine this question the usual rules of construction are applicable. Amendments to a constitution are not regarded as if they had been parts of the original instrument, but are considered and treated as having a force superior to the original to the extent to which they are in conflict. *Hodges* v. *Dawdy,* 104 Ark. 583; 8 Cyc. 749. In other words, such a construction should be put upon this amendment as will give effect to it and not defeat the obvious intention of its framers.

In the case of the *State* v. *Cox,* 8 Ark., 436, the Court said, "We must give such a construction to the amendment as will give it effect, and, if it can not take effect without conflicting with some pre-existing clause of the Constitution, the latter must yield to the former." If we should hold as contended by plaintiff, that section 22, article 19, of the Constitution, applies to amendments initiated by the people under Amendment No. 10, such a construction would be equivalent to rendering nugatory that part of Amendment No. 10 which provides that initiative petitions shall be filed with the Secretary of State not less than four months before the election at which they are to be voted upon. This is obvious when we consider this language in connection with the section of the Constitution referred to, which provides that proposed amendments shall be published for six months immediately preceding the election at which they are to be voted upon. The two clauses are in irreconcilable

conflict and it is evident that if the people may file initiative petitions with the Secretary of State up to a period of time four months before the election at which they are to be voted upon, under Amendment No. 10, such proposed amendments can not be advertised for six months as required by article 19, section 22, of the Constitution. Moreover, Amendment No. 10 provides that "petitions and orders for the initiative and for the referendum shall be filed with the Secretary of State, and in submitting the same to the people, he and all other officers shall be guided by the general laws and the acts submitting this amendment, until legislation shall be specially provided therefor." This provision of the amendment came into operation when the amendment was adopted. Thus it will be seen that by the express terms of the amendment itself, power is conferred upon the Legislature to enact the needful legislation for submitting amendments to the Constitution under Amendment No. 10, and pursuant to the power thus conferred, the Legislature of 1911 passed an act to carry into effect the initiative and referendum powers reserved to the people in Amendment No. 10. Therefore, under the usual and ordinary rules of construction, section 22, article 19, must yield to the provisions of Amendment No. 10, quoted above, which are in direct conflict with and necessarily repugnant to it. The instant case does not require us to decide whether the provisions of section 22, article 19, of the Constitution are repealed so far as amendments to the Constitution submitted under legislative authority are concerned, and we do not decide that question. We only hold that the provision of article 19, section 22, to the Constitution, in regard to the time of the publication of proposed amendments to the Constitution does not apply to proposed amendments initiated under Amendment No. 10, because there is an irreconcilable repugnancy between the two provisions. The General Assembly of 1911 passed an act to provide for carrying into effect the initiative and referendum powers reserved by the people in Amendment No. 10, to the Constitution of the

State of Arkansas. General Acts of Arkansas, 1911, page 592. Section 15 of the Act provides that publication of such proposed amendments shall be made for thirty days before the election at which they are to be voted on. This section was complied with by the Secretary of State in the present case. According to the allegations of the complaint the amendment received not only a majority of the votes cast upon that question, but also received a majority of the votes cast at the election. Hence, it is unnecessary to determine whether or not the amendment must receive a majority of the votes cast at the election.

At the general election at which Amendment No. 13 was voted upon, more than three amendments to the Constitution were submitted to the people. Counsel for plaintiff contend that Amendment No. 13 must fail because the submission of more than three amendments invalidates all. In the case of the *State, Ex rel,* v. *Donaghey, supra,* the Court used this language:

"The General Assembly having proposed two amendments to the Constitution, numbered 11 and 12, and voters having by initiative petition proposed another, numbered 13, making three in all proposed for submission at the same time, before the filing of the petition proposing said Amendment No. 15, it was attempted to be submitted in violation of the Constitution and could not therefore have been adopted."

Thus it will be seen that the Court has already recognized that amendments numbered 11, 12 and 13 could be legally submitted because they were first proposed. The Court in effect held that the first three amendments that were proposed, whether by the Legislature or by the people, or by both, should be submitted, and that when three amendments were submitted the power to submit amendments was exhausted until after the next election at which these amendments were to be voted upon. The action of the Secretary of State in submitting more than three amendments could not invalidate all of them. The Court will take judicial notice of the records of the office

of the Secretary of State, and of the journals of the Senate and House of Representatives, and can thus ascertain which three amendments were first proposed. The first three amendments were proposed in the manner provided by the Constitution, and as we have already held, were all that could be legally submitted at one election. The subsequent action of submitting additional amendments could not have the effect of avoiding that which had been legally done. To so hold would be to put it in the power of the Secretary of State, and of a small per cent of the people of the State to prevent the submission of any amendments. To illustrate, if three amendments were proposed which were not favored by a small per cent of the people which might be favored by the remainder of the people, by initiating other amendments under Amendment No. 10, and by persuading the Secretary of State to submit them to the people for adoption, a small minority of the people could prevent the submission of any amendments to the people, and thus nullify the Constitution.

It is finally insisted by counsel for plaintiff that Amendment No. 10, when considered as a whole, is void for uncertainty because it is not susceptible of a reasonable construction. This matter has been considered by the Court before, and our decisions are adverse to that contention. See *Arkansas Tax Commission* v. *Moore,* 103 Ark. 48; *Hammet* v. *Hodges,* 104 Ark. 570; *Hodges* v. *Dawdy,* 104 Ark. 583.

Therefore, we hold that Amendment No. 13 was legally adopted, and the decree will be affirmed.