## COMBS *v*. GRAY.

Opinion delivered April 12, 1926.

1. CONSTITUTIONAL LAW—CONSTRUCTION OF AMENDMENTS.—In determining the intention of the framers of constitutional amendments, the courts must keep in view the Constitution as it stood at the time the amendment was made, the evil to be remedied, and the proposed amendment by which the evil was to be remedied.

2. CONSTITUTIONAL LAW—CONSTRUCTION OF AMENDMENTS—IMPLIED REPEAL.—A constitutional amendment, when fitted into the existing Constitution, displaces such provisions only as are found to be inconsistent with it.

3. CONSTITUTIONAL LAW—ADOPTION OF AMENDMENTS—MAJORITY REQUIRED.—Amendment No. 7, adopted in 1910, providing that "any measure referred to the people shall take effect and become a law when it is approved by a majority of the votes cast thereon and not otherwise," impliedly amended art. 19, § 22, of the Constitution providing that amendments to the Constitution submitted by the Legislature shall become a part of the Constitution "if a majority of the electors voting at such election adopt such amendments," so that amendments thereafter proposed by the Legislature, as well as those initiated by the voters, become part of the Constitution when approved by a majority of the votes cast on the subject.

4. CONSTITUTIONAL LAW—AMENDMENT—LIEUTENANT GOVERNOR.—Amendment No. 16 to the Constitution, creating the office of Lieutenant Governor, which was submitted to the voters by the Legislature, and received a majority of the votes cast on the subject at the general election in 1914, became a part of the Constitution.

Appeal from Pulaski Circuit Court, First Division; *John W. Wade,* Judge; affirmed.

STATEMENT BY THE COURT.

T. A. Gray filed his petition in the circuit court against Harvey G. Combs, as Secretary of the Arkansas State Democratic Central Committee, to compel him to accept the pledge of the petitioner and the fee required to place his name on the Democratic ticket as a candidate for Lieutenant Governor.

His cause of action is based upon the ground that the office of Lieutenant Governor was created by the adoption of proposed Amendment No. 16 of the Consti-

tution. The amendment was submitted to the voters by the General Assembly of 1913, and was voted on at the general election held in 1914.

The record shows that a majority of the qualified electors who voted at said election upon the proposed amendment, voted in favor of it, but that it did not receive a majority of all the qualified electors of the State who voted at said general election held in 1914.

Amendment No. 16 was proposed by the Legislature of 1913 as an amendment to the Constitution of the State of Arkansas to be submitted to the electors of the State for approval or rejection at the next general election, which was held in 1914. Inasmuch as only the question of whether the proposed amendment was adopted or not is an issue in this case, it need not be set out in full, but will be cited as being in the Acts of Arkansas 1913, p. 1527.

The circuit court held that the amendment was legally adopted, and that it is now a part of our State Constitution. Judgment was rendered accordingly, and to reverse that judgment this appeal has been prosecuted.

*Harvey G. Combs* and *Tom W. Campbell,* for appellant.

*T. A. Gray, E. L. McHaney* and *Walter J. Terry,* for appellee.

HART, J., (after stating the facts). The correctness of the decision of the circuit court that proposed Amendment No. 16 was legally adopted and that it is now a part of our State Constitution depends upon the construction to be placed upon what has been commonly referred to as Amendment No. 10, or the Initiative and Referendum Amendment, in connection with our various decisions construing the same. Amendment No. 10 has been placed among the amendments to the Constitution in Crawford & Moses' Digest, and called by the digesters Amendment No. 7.

Inasmuch as the amendment must be considered in connection with article 19, § 22, of the Constitution, for

the sake of convenience both will be set out in this opinion. Art. 19, § 22, of the Constitution reads as follows:

"Either branch of the General Assembly at a regular session thereof may propose amendments to this Constitution, and, if the same be agreed to by a majority of all members elected to each House, such proposed amendments shall be entered on the journals with the yeas and nays, and published in at least one newspaper in each county, where a newspaper is published, for six months immediately preceding the next general election for Senators and Representatives, at which time the same shall be submitted to the electors of the State for approval or rejection; and, if a majority of the electors voting at such election adopt such amendments, the same shall become a part of this Constitution; but no more than three amendments shall be proposed or submitted at the same time. They shall be so submitted as to enable the electors to vote on each amendment separately."

Amendment No. 7 reads as follows:

Article 5, § 1, amended: "The legislative powers of this State shall be vested in a General Assembly, which shall consist of the Senate and House of Representatives; but the people of each municipality, each county, and of the State, reserve to themselves power to propose laws and amendments to the Constitution and to enact or reject the same at the polls as independent of the legislative assembly, and also reserve power at their own option to approve or reject at the polls any act of the legislative assembly. The first power reserved by the people is the initiative, and not more than 8 per cent. of the legal voters shall be required to propose any measure by such petition, and every such petition shall include the full text of the measure so proposed. Initiative petitions shall be filed with the Secretary of State not less than four months before the election at which they are to be voted upon.

"The second power is a referendum, and it may be ordered (except as to the laws necessary for the immediate preservation of the public peace, health or safety), either

by petition signed by 5 per cent. of the legal voters, or by the legislative assembly as other bills are enacted. Referendum petitions shall be filed with the Secretary of State not more than ninety days after the final adjournment of the session of the legislative assembly which passed the bill on which the referendum is demanded. The veto power of the Governor shall not extend to measures referred to the people. All elections on measures referred to the people of the State shall be had at the biennial regular general elections, except when the legislative assembly shall order a special election. Any measure referred to the people shall take effect and become a law when it is approved by a majority of the votes cast thereon, and not otherwise. The style of all bills shall be, 'Be it Enacted by the People of the State of Arkansas.' This section shall not be construed to deprive any member of the legislative assembly of the right to introduce any measure. The whole number of votes cast for the office of Governor at the regular election last preceding the filing of any petition for the initiative or for the referendum shall be the basis on which the number of legal votes necessary to sign such petition shall be counted. Petitions and orders for the initiative and for the referendum shall be filed with the Secretary of State, and in submitting the same to the people he and all other officers shall be guided by the general laws and the acts submitting this amendment until legislation shall be specially provided therefor.''

In the early history of this court, in *State* v. *Scott*, 9 Ark. 270, a safe rule of constitutional construction with reference to amendments to the Constitution was stated as follows: ''In determining the intention of the framers of the amendment, we must keep in view the Constitution as it stood at the time the amendment was made, the evil to be remedied by the amendment, and the amendment proposed, by which the evil is to be remedied. No interpretation should be allowed which would conflict with any other provision of the Constitution, or which is not absolutely necessary in order to give effect to the proposed

amendment. On the contrary, such construction should be given as will, if possible, leave all the other provisions in the Constitution unimpaired and in full force."

Practically the same rule was adopted in *Hodges* v. *Dawdy,* 104 Ark. 583, where what is commonly called the Initiative and Referendum Amendment now under consideration was before the court for construction. The court said: "The constitutional amendment whereby the people of the State reserve to themselves the power to legislate directly by the initiative and referendum does not abrogate the existing Constitution and laws of the State, except such provisions as are necessarily repugnant thereto (citing cases). The amendment being the last expression of the popular will in shaping the organic law of the State, all provisions of the Constitution which are necessarily repugnant thereto must of course yield, and all others remain in force. It is simply fitted into the existing Constitution, the same as any other amendment, displacing only such provisions as are found to be inconsistent with it."

One or the other of these modes of expressing the same practical rule of construction has been cited with approval in all subsequent decisions relating to the amendment now under consideration.

In the cases of *Ferrell* v. *Keel,* 105 Ark. 380, and *Brickhouse* v. *Hill,* 167 Ark. 513, the rule in the Scott case was quoted with approval, and in the Keel case it was said that no better rule of construction has ever been proposed at any time or any place. Practically the same rule as expressed in the Hodges case has been approved in the cases of *State ex rel.* v. *Donaghey,* 106 Ark. 56; *Grant* v. *Hardage,* 106 Ark. 506; and *Hildreth* v. *Taylor,* 117 Ark. 465.

In the Donaghey case, it was held that the Initiative and Referendum Amendment now under consideration did not abrogate § 22, art. 19, of the Constitution, which provides that no more than three amendments shall be proposed or submitted at the same time. The court was of the opinion that, in the absence of anything in the

amendment conferring initiative and referendum powers indicating an intention to repeal the existing constitutional provision, the latter remained in force and governed in all cases relating to the submission of amendments to the Constitution.

In the Hardage case it was held that, because the Initiative and Referendum Amendment provided that initiative petitions shall be filed with the Secretary of State not less than four months before the election at which they are to be voted on, this language should be given its ordinary and natural meaning, and should govern in cases where amendments to the Constitution are submitted under the initiative. The court expressly refrained from deciding whether this provision was inconsistent with or repugnant to the provision in art. 19, § 22, providing for six months' publication where amendments to the Constitution are submitted by the Legislature.

In the Hildreth-Taylor case the court had under consideration the question of whether the Initiative and Referendum Amendment changed the existing rule as to the number of votes necessary to the adoption of an amendment submitted under the initiative.

Under article 19, § 22, of the Constitution as construed in *Rice* v. *Palmer,* 78 Ark. 432, it was held that an amendment to be adopted must receive a majority not only of the votes cast thereon, but of all the votes recorded at the election at which the amendment was voted on.

In the Hildreth-Taylor case it was contended that the Initiative and Referendum Amendment provided a different rule with reference to amendments initiated by a percentage of the people, and the contention was based upon the following found in the second paragraph of the amendment: "Any measure referred to the people shall take effect and become a law when it is approved by a majority of the votes cast thereon, and not otherwise."

The court was of the opinion that the clause just quoted was applicable only to measures submitted to the people under the legislative referendum, and that

"referendum" in its technical sense is·the referring of legislative acts to the electorate for their final acceptance or rejection, and that it had no reference whatever to constitutional amendments whether submitted under the initiative or by the intervention of the Legislature.

This same question was again presented in *Brickhouse* v. *Hill,* 167 Ark. 513, and the Hildreth-Taylor case was overruled in so far as it applied to amendments to the Constitution submitted under the initiative.

This much is conceded by counsel for appellant, but it is insisted that the ruling in the Hildreth-Taylor case is left unimpaired, in so far as amendments submitted by the Legislature are concerned.

The majority of the court does not agree with counsel in this contention. We believe that such a construction would be inconsistent with and contrary to the reasoning in both the Hildreth-Taylor case and the Brickhouse-Hill case and would leave the people of the State in the anomalous condition of having different rules for the adoption of amendments to the Constitution. In other words, an amendment to the Constitution submitted by the Legislature to be adopted would be required to receive a majority of the votes cast at the election at which it was voted on, while an amendment submitted under the initiative would be required to receive merely a majority of the votes cast thereon. This condition would result in the practical abrogation of submitting amendments by the Legislature; for persons interested in amending the Constitution, knowing that, where an amendment was submitted by the interposition of the Legislature the rule would be that all voters voting at the election, and not voting either for or against the amendment, would be counted against it, would, in the very nature of things, adopt the initiative method, where·the rule would be that only those votes should be counted where the voters expressed an opinion one way or the other on the matter at hand.

In the Hildreth-Taylor case this view was expressly recognized. It was said that it would be doing violence

to the design of the framers of the amendment to attribute to them an intention to require a less number of votes to adopt an amendment proposed by the people under the power of the initiative than one submitted by the Legislature. The decision in the Hildreth-Taylor case is based entirely upon a line of reasoning that the sentence or clause under consideration did not refer at all to constitutional amendments, whether proposed through the intervention of the Legislature or directly by a percentage of the voters under the initiative.

In answer to the argument that, if the sentence under consideration should be restricted to legislative acts referred to the people, no rule would be laid down in the amendment for the adoption of acts initiated by a percentage of the voters, it was said that this is a government of majorities, or rather a plurality, of the votes cast on any given question, unless there is some contrary specification in the organic law; and that, when the framers of the amendment provided for the submission of acts under the initiative, it was necessarily meant that the majority of those voting on the particular act should control. If that was the rule with regard to acts under the initiative power of the amendment, we cannot perceive why it would not be the rule as to legislative acts under the referendum power of the amendment. Hence the sentence in question need not have been used at all, if it was intended to apply only to legislative acts referred to the people, or even to laws or acts submitted to the people under the initiative power of the amendment as well as the referendum power of the amendment.

Again, it is said in the Hildreth-Taylor case that the addition of the words "and not otherwise" manifests the intention to make the sentence in question apply only to legislative bills referred to the voters. It is said that otherwise the words would be meaningless, because an act under the initiative could not in any event become a law until it was approved by the people at an election. The same thing might be said with reference to ordinary legislation which is submitted by the Legislature to the

people for approval or disapproval before it becomes a law. In short, according to the reasoning in the Hildreth-Taylor case, the sentence under consideration need not have been used at all, if it is to be confined to legislative measures submitted to the voters under the power of the referendum; for the mere fact that the framers of the amendment provided for the exercise of the initiative and referendum meant that the majority of those voting on the particular measure submitted, either under the initiative power or the referendum power of the amendment, should control. At least the views expressed by the majority herein are in accord with the reasoning of the majority in the Brickhouse-Hill case, and it is evident from the language used and the conclusions reached by the majority in that case that it not only did not adopt but entirely disapproved of the reasoning in the Hildreth-Taylor case.

In the majority opinion in the Brickhouse-Hill case it is expressly held that the words, "any measure referred to the people shall take effect and become a law when it is approved by a majority of the votes cast thereon," include amendments to the Constitution submitted under the initiative power of the amendment. In this view it would seem that the words, "and not otherwise," were added by way of emphasis to show that each and every measure referred to the people included constitutional amendments as well as acts or laws submitted either under the initiative or referendum power of the amendment. If the amendment is to be fitted into the Constitution and become amalgamated in it, it must be read in the light of the existing provisions of the Constitution on the same subject, and should be construed so as to accomplish the end intended, if that can be done by giving the words used their just and legitimate meaning. The sentence in question is couched in general terms, and if the general words used are broad enough to include amendments to the Constitution under the initiative power of the amendment, as held in the Brickhouse-Hill

case, they are equally comprehensive to include amendments submitted by the Legislature.

The Initiative and Referendum Amendment in explicit terms enables a percentage of the voters to enact laws and propose amendments to the Constitution which the Legislature could enact and propose, but did not. It was not intended to confer greater power upon the people acting under the amendment than that possessed by the Legislature, so as to enable the former to enact laws or propose amendments which the latter could not enact or propose, or which might be declared adopted by a method easier to execute. The procedure for direct legislation by the qualified electors is necessarily completed by popular vote, and to that extent the initiative is like the legislative referendum. From the beginning, our State Constitution and amendments thereto have been referred to the voters of the State for ratification or rejection. The voters are not concerned with the question of whether a constitutional amendment originates within the Legislature or with a certain percentage of the voters. As it has been aptly stated, "it is not the origin but the nature of the measure that concerns the voters, when it is submitted to them." If the voters can act intelligently on constitutional amendments brought before them by means of the initiative, they can act with equal intelligence on amendments submitted to them by the Legislature. There is no reason to suppose that the voters would be less capable of deciding wisely in the one case than in the other. We can perceive no good reason of public policy that could have been served by the framers of the amendment in requiring a different rule for the number of votes necessary to the adoption of an amendment to the Constitution proposed by the voters from an amendment submitted by the Legislature. Of course, what we have said applies to the first Initiative and Referendum Amendment. In this connection it may be stated that the decision in the Brickhouse-Hill case put into effect an amendment to the Constitution voted on in 1920 and submitted by an initiative petition as

Amendment No. 13, or the second Initiative and Referendum Amendment.

The decision in the Brickhouse-Hill case is to the effect that the first Initiative and Referendum Amendment, which is the one under consideration in this case, substituted a new and different requirement as to the number of votes necessary to the adoption of an amendment to the Constitution, whether such amendment was submitted or referred to the electorate directly by the voters themselves or indirectly by the Legislature.

Article 19, § 22, of the Constitution provides that amendments to the Constitution proposed by the Legislature shall be submitted to the electors of the State for approval or rejection. This is but another way of saying that such amendments shall be referred to them for adoption. The Initiative and Referendum Amendment expressly provides that the people of the State reserve to themselves power to propose laws and amendments to the Constitution and to enact or reject the same at the polls, independent of the legislative assembly.

The second paragraph of the amendment provides for the referendum. Then comes the sentence that "any measure referred to the people shall take effect and become a law when it is approved by a majority of the votes cast thereon, and not otherwise." If it had been intended to limit the meaning of this sentence to legislative measures under the referendum, it would have been easy to have used words to that effect. The sentence might have read: "Any legislative measure under the referendum should take effect and become a law when it is approved by a majority of the votes cast thereon." If it was desired to provide this rule for acts under the initiative as well as under the referendum, it might have read that any legislative measure submitted under the initiative or under the referendum shall become a law when it is approved by a majority of the votes cast thereon. If it was desired to leave the rule in force under the existing Constitution as declared in the Rice-Palmer case, it might have been provided that all legislative acts

under the initiative and under the referendum and all amendments to the Constitution under the initiative shall take effect when approved by a majority of the votes cast thereon. In short, if the framers of the amendment had desired to exclude amendments submitted by the Legislature, they would have provided that "any measure referred to the people under this amendment shall take effect and become a law when it is approved by a majority of the votes cast thereon." Instead of doing this, however, the framers of the amendment undertook to cover the whole matter by providing *that any measure referred to the people* shall take effect and become a law when it is approved by a majority of the votes cast thereon, and not otherwise. As we have already seen, all constitutional measures are referred to the electorate for adoption, and the majority is of the opinion that the framers of the amendment meant that all constitutional measures, whether submitted by the Legislature or directly by the people, and all initiated measures as well as legislative measures referred to the people should take effect when approved by a majority of the votes cast thereon.

The words, "any measure referred to the people," are general words, and there is nothing in the words themselves or in the context to show that they were used in any technical or restricted sense. When these words are given their just and legitimate meaning, they are comprehensive enough to include *each and every measure which may be referred to the people for adoption or rejection.* The words "and not otherwise" are words of emphasis, and indicate that no other rule is to be established either for the adoption of constitutional amendments or for the enactment of laws.

In this view of the matter, the I. & R. Amendment No. 10 (7) in this respect is inconsistent with the provision on the subject in the Constitution as originally adopted, and, being the last expression of the sovereign will of the people, will prevail as an implied modification *pro tanto* of art. 19, § 22, of the Constitution.

It necessarily follows from what we have said that a majority of the court is of the opinion that the words, "any measure referred to the people," include constitutional amendments, whether proposed and submitted by the Legislature or proposed by a percentage of the legal voters under the power of the initiative in the amendment, as well as to direct legislation by the voters under the initiative, and legislative acts under the referendum.

Therefore the judgment of the circuit court will be affirmed.

McCulloch, C.J., (dissenting). The measure now under consideration is one that was proposed by the General Assembly—not one initiated by the people under Amendment No. 7. In *Rice* v. *Palmer,* 78 Ark. 432, and in *Railway Company* v. *Kavanaugh,* 78 Ark. 468, it was decided that, in order to adopt an amendment proposed by the Legislature, it must receive a majority of all the votes cast at the election—not merely a majority of the votes cast on the question of adoption. We are asked to overrule those decisions, but I decline to do so—and the majority have refrained from doing so in the decision in the present case. The contention now sustained by the majority of the court is that Amendment No. 7, which was adopted in the year 1910, changed the rule both as to amendments proposed by the Legislature as well as those initiated by the petition of the people. In *Hildreth* v. *Taylor,* 117 Ark. 465, this court decided that the rule announced in *Rice* v. *Palmer, supra,* had not been changed as to amendments proposed in either manner. That case was overruled in *Brickhouse* v. *Hill,* 167 Ark. 513, so far as it applied to initiated amendments. That is as far as the latter decision extended, and I accept it as an established precedent to that extent. It was not contended in *Hildreth* v. *Taylor, supra,* that Amendment No. 7 would change the rule as to amendments proposed by the Legislature. On the contrary, it was conceded that the change related only to initiated amendments. The opinion in that case, and the accompanying briefs, show that court and counsel had in mind that the require-

ment of the Constitution, as interpreted in *Rice* v. *Palmer, supra,* with respect to amendments proposed by the Legislature, was unchanged. Such was, in effect, the decision in *Hildreth* v. *Taylor,* and I am unwilling to recede from it. I think that, when the Constitution is once deliberately interpreted by the court of last resort, that interpretation should not be overruled. Amendment No. 7 did not relate to anything but initiative measures or those referred in accordance with the provisions of that amendment. It did not interfere with the power of the Legislature conferred in the old Constitution, and did not change the Constitution except to add or reserve the power of the people to initiate measures or to compel a referendum. When that amendment was adopted, the Constitution already contained a provision for referendum of all proposed amendments, hence the new amendment did not deal at all with that subject. It did not repeal or amend any part of the old Constitution except, as before stated, to add the reserved power of the people, as it was in no other respects repugnant to the provisions of the old Constitution. This is the construction we have heretofore placed on Amendment No. 7 in the various opinions of the court up to *Brickhouse* v. *Hill, supra.* The quotations in the majority opinion from the former cases show that the rule has been firmly established, with regard to amendments to the Constitution, to the effect that they do not repeal any prior provisions except those repugnant to the last expression of the will of the people. *State* v. *Scott,* 9 Ark. 270; *Hodges* v. *Dawdy,* 104 Ark. 583; *Ferrell* v. *Keel,* 105 Ark. 380; *State ex rel.* v. *Donaghey,* 106 Ark. 56.

Amendment No. 7 contains the following provision: "The style of all bills shall be, 'Be it enacted by the people of the State of Arkansas,' " and in *Ferrell* v. *Keel, supra,* the court decided that this provision did not repeal the requirement of the old Constitution that the style of all legislative bills shall be, "Be it enacted by the General Assembly of the State of Arkansas." The point of that decision was that Amendment No. 7 did not change the

old Constitution except so far as it conflicts with the new amendment. In *State ex rel.* v. *Donaghey, supra,* we decided that the amendment did not repeal the limitations in the old Constitution upon the number of amendments to be submitted at an election.

The principal argument in support of the view that the old provision as to the number of votes required to adopt an amendment was repealed by Amendment No. 7 is that the latter contained an express provision that "any measure referred to the people shall take effect and become a law when it is approved by a majority of the votes cast thereon." In the preceding part of the amendment the referendum is defined as a vote by the people on a measure presented on petition of a certain percentage of the legal voters, hence the words "measure referred to the people" should be construed to mean measures referred on petition, and not to constitutional amendments proposed by the Legislature under the provisions of the old Constitution. There is, as before stated, nothing in Amendment No. 7 to evince an intention on the part of its framers to deal with anything else except the reserved power of the people in regard to matters referred to the people under the reserved power. If its framers felt any concern about the method of adopting amendments proposed by the Legislature, or thought of the anomaly of having separate methods of adoption for the two different kinds of amendments, they would doubtless have expressed in appropriate language their intention to change the rule declared in *Rice* v. *Palmer, supra,* by repeal of that feature of the old Constitution.

The new scheme of government embraced in Amendment No. 7 was one borrowed from another State, where the evil sought to be corrected was supposed dereliction of legislative bodies, and the sole idea was to give the people a right to assert themselves where such dereliction was shown, either in refusing legislation desired by the people or in thrusting undesirable legislation upon the people without their approval. Such was the idea here in adopting Amendment No. 7, and the whole legislative

scheme was left unimpaired otherwise than as to the right of the people to initiate and to have referred to them all legislation when a referendum was sought by the necessary percentage of legal voters, and that was evidently what was in the minds of the members of this court when former decisions were rendered. Those decisions have been acquiesced in to the extent of the abandonment of numerous amendments which had fallen under the ban. Several proposed amendments which were declared defeated under the doctrine announced in those decisions were submitted more than once. The so-called bond amendment was resubmitted the third time upon the idea that it had failed of adoption under prior decisions, and the amendment increasing the number of judges of the Supreme Court was resubmitted after having been adopted by the rule now announced by the court.

I am authorized to say that Mr. Justice SMITH concurs in these views.